# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GENE A. JAMES, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-13-278-RAW-SPS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Gene A. James requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on January 26, 1964, and was forty-seven years old at the time of the administrative hearing (Tr. 45, 147). He has a high school education and past relevant work as a prototype technician, equipment sales representative, roughneck, and millwright (Tr. 35). The claimant alleges inability to work since December 19, 2009 because of back injury, depression, and panic and anxiety disorders (Tr. 167).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, as well as supplemental security insurance payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on October 8, 2010. His applications were denied. Following an administrative hearing, ALJ Osly F. Deramus found that the claimant was not disabled in a written opinion dated February 3, 2012 (Tr. 20-36). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the ability to perform less than the full range of sedentary work, *i. e.*, that he could lift and carry up to ten pounds occasionally and five pounds frequently,

sit for up to six hours and stand or walk for up to two hours in an eight-hour workday. He imposed the following additional limitations: (i) occasional stooping and balancing; (ii) never crouching or crawling; (iii) occasionally climbing stairs but never climbing ladders; (iv) performing simple and some complex tasks; (v) relating to co-workers, supervisors, and the public on a superficial work basis; and (vi) adapting to a work setting (Tr. 25). The ALJ concluded that even though the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, semi conductor assembler (Tr. 35).

## Review

The claimant contends that the ALJ erred: (i) by failing to find he had additional severe impairments, (ii) by failing to properly evaluate his RFC, and (iii) by failing to make proper step five findings. None of these contentions have merit, and the decision of the Commissioner should therefore be affirmed.

The ALJ found the claimant's degenerative disc disease of the lumbar spine, anxiety, depression, and post-traumatic stress disorder were severe impairments, and that his obesity and bilateral knee pain and neck pain were nonsevere (Tr. 22-23). Treatment notes from Dr. Charles Jackson indicate that the claimant complained of increased back pain and decreased range of motion (Tr. 235-239). Dr. Jackson also treated him for hypertension and anxiety (Tr. 235-239). Notes indicate that the claimant was referred for five physical therapy treatments for his back pain, and that they explained he may need to look at an "easier job" or retraining (Tr. 235). Scans in January 2010 revealed bilateral

patellofemoral syndrome in his knees, worse on the right side, as well as mild degenerative changes in the medial compartment (Tr. 245), a small left lateral disc protrusion at L4-5, a broad based moderate disc bulge at L5-S1 and small central protruding component (Tr. 246). The back showed changes from a 2008 scan which showed disc space narrowing at L5-S1 (Tr. 248). On May 7, 2010, the claimant reported at the River Valley Rehab Center that his low back pain had improved, and the physical therapist noted that the claimant ambulated without an external assistive device (Tr. 254). On December 1, 2010, Dr. Jackson's notes indicate that the claimant was still experiencing back, neck, and shoulder pain, and that he had been unable to work due to decreased flexibility, and that he was unable to sit, stand, or walk for very long (Tr. 309). He assessed the claimant with low back pain, leg pain, and numbness in his feet, and recommended that he "look into SSI" (Tr. 309). On May 23, 2011, Dr. Jackson drafted a letter stating that he had treated the patient for several years, and recited the MRI results from January 2010 (Tr. 317). In July 2011, he completed a physical RFC assessment indicating that the claimant could sit/stand ten minutes at a time, and walk fifteen minutes at a time, but only sit and walk five minutes in an eight-hour workday and stand ten minutes (Tr. 318). He indicated that the claimant needed an assistive device to walk and rest breaks at hourly intervals or less (Tr. 318). He checked that the claimant could only rarely lift/carry up to five pounds, that his lower extremities were limited, and that the claimant's legs would need to be elevated (Tr. 319). In addition to numerous other grasping, fingering, and postural limitations, and mild restrictions related to exposure to

respiratory irritants, he stated, "Patient unable to work due [to] slowly degenerative disease of spine[,] pain & irritability" (Tr. 320).

Traci Carney, D.O., conducted a physical examination of the claimant's impairments on December 18, 2010 (Tr. 261). Upon exam, Dr. Carney wrote that the claimant had a full range of motion in the cervical and thoracic spines, but the range of motion evaluation chart indicated limited range of motion for back extension and flexion, neck extension and flexion, and back lateral flexion of the left and right sides (Tr. 264). She assessed the claimant with low back pain, degenerative in nature; cervicalgia, probable degenerative in nature; bilateral knee pain; anxiety, on medication; depression, on medication; and history of panic disorder, on medication (Tr. 263).

Diane Brandmiller, Ph.D., conducted a mental status examination on December 28, 2010 (Tr. 268). She noted that his short term memory, concentration, and abstract thinking appeared intact, as well as his expressive and receptive language skills, and that he appeared able to understand and carry out simple instructions (Tr. 271). Her diagnostic impression was depressive disorder not otherwise specified, high blood pressure, degenerative disc disease, and back and neck problems, as well as unemployment. She assessed him with a global assessment of functioning (GAF) score of 61-70 (Tr. 271).

A state reviewing physician found the claimant had a mild degree of limitation as to his restriction of activities of daily living, and moderate restrictions in difficulties in maintaining social functioning and maintaining concentration, persistence, and pace, with

no episodes of decompensation (Tr. 283). Furthermore, a state reviewing physician found the claimant was physically capable of performing light work, with only occasional stooping, kneeling, crouching, and crawling (Tr. 292-293).

The claimant's counsel sent him for another psychiatric evaluation, which was completed by Sonja Greiner, a nurse practitioner who works with Dr. Donald Chambers, on August 4, 2011 (Tr. 302). Her diagnostic impression was that the claimant had PTSD; dysthymia with superimposed MDD, Recurrent, severe without psychosis; IED; rule out bipolar; borderline traits; hypertension; and a GAF of 45-50 (Tr. 303). She noted that the claimant's mood was depressed with affect and mood congruent, and discussed the claimant's medications (Tr. 303). On January 3, 2012, Dr. Chambers completed a mental functional capacity evaluation. He indicated that the claimant had marked limitations with regard to: relating to coworkers, interacting with supervisors, dealing with work stresses, adjusting to the introduction of new and unfamiliar personnel among coworkers or supervisors, behaving in an emotionally stable manner, interacting with the general public, asking simple questions and requesting assistance, accepting instructions and appropriately responding to criticism from supervisors, getting along with coworkers or peers without distracting them or exhibiting behavioral extremes, and working in coordination or proximity to others without being distracted by them (Tr. 321-324). He also indicated another eleven moderate limitations and fourteen mild limitations (Tr. 321-324). He indicated the claimant had experienced these problems for ten years but with increasing difficulty leading to a breaking point in 2009 (Tr. 322).

The claimant first contends that the ALJ erred by failing to classify his knee pain and neck pain as severe impairments at step two. Assuming *arguendo* that this *was* error by the ALJ, such error was nevertheless harmless because the ALJ *did find* the claimant's degenerative disc disease of the lumbar spine, anxiety, depression, and PTSE to be severe impairments, which obligated the ALJ to then consider *all* of the claimant's impairments (severe or otherwise) in subsequent stages of the sequential evaluation, including the step four assessment of the claimant's RFC. *See, e. g., Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal . . . the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [citations omitted]. *See also Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("At step two, the ALJ must consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004), *quoting* 20 C.F.R. § 404.1523; Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *5 (July 2, 1996). There is no

suggestion here that the ALJ failed to consider all of the claimant's impairments at step four, so any error by the ALJ at step two was harmless.

The claimant does, however, contend that the ALJ committed error at step four by: (i) erroneously stating that Dr. Jackson did not refer him for further treatment for back problems, when he did order physical therapy and pain management; (ii) improperly rejecting Dr. Jackson's RFC evaluation and Dr. Chambers's mental evaluation, (iii) failing to recontact Dr. Chambers to clarify his assessment; and (iv) improperly finding he can sit six hours in a workday. But the ALJ provided a detailed discussion of the relevant evidence in the record, and his opinion clearly indicates that he adequately considered the evidence in reaching his conclusions regarding the claimant's RFC. *Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.' "), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

For example, the ALJ was required to assign controlling weight to the medical opinions of treating physicians only if they were "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). And even if medical opinions are not entitled to controlling weight, the ALJ must determine the

proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Langley*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300 and Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996). The pertinent factors include: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins*, 350 F.3d at 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ's conclusions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5.

The ALJ's treatment of Dr. Jackson and Dr. Chambers' opinions meet these standards. He assigned "little weight" to Dr. Jackson's opinion and found that his RFC assessment was "inconsistent with the preponderance of the evidence" because: (i) he did not refer the claimant for orthopedic evaluation for his back pain, (ii) there was no

evidence of emergency room visits or referrals to pain clinics, (iii) he was maintained on prescription medications that he had taken for years prior to his alleged onset date, (iv) Dr. Jackson only saw the claimant every few months for medication management, and (v) he encouraged the claimant to see an easier job due to the physical demands of a job in the oil and gas industry (Tr. 32). Although his characterization of some of the evidence is questionable, *i. e.* his assertion that Dr. Jackson's failure to make a specific type of referral was relevant evidence, the ALJ nevertheless made clear that he did not base his ultimate conclusion on this basis. The ALJ's opinion was sufficiently clear for the Court to determine the weight he gave to Dr. Jackson's opinion, as well as sufficient reasons for the weight assigned. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case."), *citing* 20 C.F.R. § 404.1527(d)(2).

As to Dr. Chambers's mental assessment, the ALJ gave this opinion "little weight" as well, because: (i) despite a lack of longitudinal treatment history, he asserted the claimant's condition had remained substantially the same for ten years which indicated that he relied on the claimant's subjective complaints; (ii) the degrees of limitation defined on the form completed by Dr. Chambers were inconsistent with Social Security regulations and definitions; (iii) according to Dr. Chambers's own notes, the claimant responded well to medication; (iv) the findings were inconsistent with the claimant's reported daily activities. *See, e. g.*, *Griner v. Astrue*, 281 Fed. Appx. 797, 800 (10th Cir.

2008) (noting that "'a treating physician's report may be rejected if it is brief, conclusory and unsupported by medical evidence.'"), *quoting Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988).

The claimant contends that ALJ should have recontacted Dr. Chambers to clarify his mental assessment because he used definitions different than those of the Social Security Administration (which the ALJ cited as a criticism). While an ALJ may not engage in unsubstantiated speculation to reject a treating physician opinion, *see, e. g., McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion."), *quoting Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000), there is no indication here that the ALJ rejected Dr. Chambers's opinion in this fashion. If the ALJ had any doubts what Dr. Cooper meant, he had the discretion to recontact the doctor to clear it up. *See* 20 C.F.R. § 404.1520b(c) ("[I]f after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency . . . We may recontact your treating physician, psychologist, or other medical source."). Absent such concerns, the ALJ was not (as the claimant suggests) required to do so.

The essence of the claimant's appeal here is that the Court should re-weigh the evidence and determine his RFC differently from the Commissioner, which the Court

2008) (noting that "'a treating physician's report may be rejected if it is brief, conclusory and unsupported by medical evidence.'"), *quoting Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988).

The claimant contends that ALJ should have recontacted Dr. Chambers to clarify his mental assessment because he used definitions different than those of the Social Security Administration (which the ALJ cited as a criticism). While an ALJ may not engage in unsubstantiated speculation to reject a treating physician opinion, *see, e. g., McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion."), *quoting Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000), there is no indication here that the ALJ rejected Dr. Chambers's opinion in this fashion. If the ALJ had any doubts what Dr. Cooper meant, he had the discretion to recontact the doctor to clear it up. *See* 20 C.F.R. § 404.1520b(c) ("[I]f after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency . . . We may recontact your treating physician, psychologist, or other medical source."). Absent such concerns, the ALJ was not (as the claimant suggests) required to do so.

The essence of the claimant's appeal here is that the Court should re-weigh the evidence and determine his RFC differently from the Commissioner, which the Court

simply cannot do. The ALJ specifically noted every medical record available in this case, *and still concluded* that he could work. *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard*, 379 F.3d at 949. *See also Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir.2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), citing 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

The claimant's final contention is that he cannot perform the jobs identified by the ALJ because he cannot perform light work. But the ALJ concluded otherwise, and as discussed above, substantial evidence supports the ALJ's determination in this regard. The claimant's fourth contention is therefore without merit.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 10th day of September, 2014.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**